The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner. The appealing party has shown good ground to reconsider the evidence. Therefore, the Full Commission rejects and reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant-employer is a duly qualified self-insured.
4. Plaintiffs average weekly wage is $334.00 per week.
5. The date giving rise to this claim is November 16, 1998.
6. Plaintiff was out of work from November 17, 1998 through November 20, 1998 and March 8, 1999 through April 18, 1999.
7. Plaintiff has returned to work in her prior position at the same or greater wage.
8. Plaintiffs answers to defendants interrogatories and plaintiffs medical records were stipulated into evidence as Stipulated Exhibit 1.
9. The Form 19 for this case was stipulated into evidence as Stipulated Exhibit 2.
10. The accident report for defendant-employer was stipulated into evidence as Stipulated Exhibit 3.
11. A transcript of plaintiffs recorded statement was stipulated into evidence as Stipulated Exhibit 4.
12. A letter from David F. Martin, M.D., was stipulated into evidence as Stipulated Exhibit 5.
13. The issues for decision before Deputy Commissioner Jones were: (i) whether plaintiff sustained an injury by accident; and (ii) if so, what compensation, if any, is due plaintiff?
***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Jones, plaintiff was forty-one years old and had a high-school education. Plaintiff received her certification as a nursing assistant from Forsyth Technical Community College in 1989. Since receiving her certification, plaintiff has been employed by the Wake Forest University School of Medicine, Orthopedic Surgery and Rehabilitation Department, hereinafter defendant-employer.
2. Plaintiff works five days a week from 8:00 a.m. to 5:00 p.m. with defendant-employer. Plaintiffs supervisor is Sandra Tobran.
3. Plaintiffs job duties required her regularly to place patients into examining rooms in the Orthopedic Department, take vital statistics including height measurements from patients, change patients dressings, apply stitches or staples to patients, and assist with buttock shots.
4. On November 16, 1998, plaintiff was assisting Dr. Komans with one of his patients. Plaintiff had taken the patients temperature and was beginning to determine the patients height. Plaintiff placed her tape measure at the top of the patients head and was squatting down in her usual manner to determine the patients height. Plaintiff had customarily measured the height of patients in this manner in the past. When plaintiff attempted to stand back up, she felt pain in her left knee. The pain was shooting throughout her left leg. Plaintiffs left knee was locked and she could not return to an upright, standing position. Plaintiff attempted to straighten out her left leg but could not and therefore hopped out of the cubicle to a chair in the hallway. Since this incident occurred during the latter part of plaintiffs shift, she completed her shift by sitting in a chair for the remaining time.
5. Plaintiff informed her supervisor, Sandra Tobran, and a physicians assistant, Martha Woods, about the incident and her left knee pain.
6. Dr. Williams, a doctor in the Orthopedics Department, examined plaintiff on November 16, 1998 and indicated that he believed she had a possible meniscus injury. Dr. Williams prescribed anti-inflammatories. Thereafter, plaintiff returned home and took anti-inflammatories, which did not relieve her pain.
7. Plaintiff returned to work the following day November 17, 1998, but experienced increasing pain. She was directed to Employee Health and received an appointment with Dr. David Martin for November 24, 1998.
8. Plaintiff was out of work for three days after the incident involving her left knee. Thereafter, plaintiff returned to work and performed her normal job duties during her conservative treatment except for taking the vital information from patients which now required assistance.
9. Plaintiff began treating with Dr. Martin on November 24, 1998. Dr. Martin recommended an MRI and prescribed anti-inflammatories. The medication helped plaintiffs pain somewhat. However, the MRI revealed a medial meniscus tear in plaintiffs left knee and conservative treatment was ultimately unsuccessful.
10. On March 8, 1999, plaintiff underwent arthroscopic surgery on her left knee, performed by Dr. Martin, to repair her torn medial meniscus. The surgery was successful and Dr. Martin directed plaintiff to physical therapy.
11. Thereafter, plaintiff returned to work on April 18, 1999 without restrictions.
12. Dr. Martin determined that plaintiff has a fifteen percent permanent partial disability rating to her left knee. In addition, Dr. Samuel A. Sue, Jr. examined plaintiff at defendant-employers request on October 6, 1999 for a second opinion on the permanent partial disability rating. Dr. Sue agreed with Dr. Martin and rated plaintiff with a fifteen percent permanent partial disability to her left knee.
13. On November 16, 1998, plaintiff was taking the patients height measurement as part of her usual duties as a certified nursing assistant. Plaintiff normally measured a patients height by placing the tape measure at the top of the patients head and squatting down to make sure the tape measure reached the patients feet. Plaintiff was measuring the patients height in her usual and customary way on November 16, 1998. Nothing unusual occurred on November 16, 1998 when plaintiff was attempting to measure the patients height other than the fact that plaintiff felt pain in her left knee as she attempted to return to a standing position from a squatting position. Plaintiff did not suffer an interruption of her normal work routine.
14. Furthermore, the greater weight of the evidence reveals that plaintiff did not suffer a twisting injury to her left knee. Plaintiff did not testify, at the hearing before the Deputy Commissioner, in her discovery responses or during her recorded statement, that she twisted her knee. Likewise, the Employee Health records reveal that plaintiffs injury involved no twisting. Neither the Occurrence Report nor the Form 19 make any mention of twisting. Furthermore, Dr. Martins initial office visit record does not mention any twisting when describing plaintiffs injury. A single line in Dr. Martins operative note, written almost four months after the incident occurred, to the effect that plaintiff sustained a twisting injury carries little weight in contrast to plaintiffs contrary testimony and the contrary medical evidence of record.
15. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment. Although an incident occurred on November 16, 1998, there was no accident as defined under the Act because plaintiff was performing her usual job duties in the customary manner.
***********
Based on the foregoing findings of fact, the Full Commission concludes as follows
 CONCLUSION OF LAW
Plaintiff did not sustain an injury by accident arising out of and in the course and scope of her employment with defendant-employer on November 16, 1998. Therefore, plaintiff is not entitled to benefits under the North Carolina Workers Compensation Act.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Under the law, plaintiffs claim must be, and the same is, hereby DENIED.2. Each side shall bear its own costs.
This the ___ day of August 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
DISSENTING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DCS/bjp